UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| PANKUL MATHUR | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. 13-cv-7206 |
| HOSPITALITY PROPERTIES TRUST, A Massachusetts-based Real Estate Investment Trust, and WYNDHAM HOTEL MANAGEMENT, INC., A Delaware Corporation, | ) | Judge Sharon Johnson Coleman |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Pankul Mathur ("Mathur") filed a complaint against Hospitality Properties Trust ("HPT") and Wyndham Hotel Management ("WHM") for negligence, negligent infliction of emotional distress, and spoliation of evidence. Mathur alleges in his complaint that he was robbed while staying at Defendants' Hotel 71 in Chicago and that Defendants wrongfully destroyed security camera footage from the night of the robbery. Defendants now move for summary judgment on all the claims brought against them. For the reasons stated below, the Court denies in part and grants in part the motion.

**Background**

The following facts are undisputed except where a dispute is noted. Mathur is an international airline pilot who lives in India. Dkt. 119, ¶¶ 1, 4. On April 14, 2013 Mathur flew into Chicago and checked into Hotel 71 ("the Hotel"). *Id.* ¶ 8. The Hotel is owned by HPT and operated by WHM. *Id.* ¶¶ 2-3. The next day at around 10:40pm, Mathur heard a knock on the door of his hotel room while he was sleeping. *Id.* ¶ 9. Mathur, without using the door's peephole or asking who was there, unlocked and opened the door. *Id.* ¶ 14. An individual, A. James ("James"), then gained access to

Mathur's room.[1] *Id.* Mathur alleges that James then robbed Mathur of around $500 by taking cash out of Mathur's wallet that was lying on the bedside table. *Id.* ¶ 27.

A housekeeping employee of the Hotel, Anthony Downs ("Downs"), was in the hallway close to Mathur's room when James and Mathur exited the room. Dkt. 117 ¶¶ 15-20. Mathur alleges but Defendants dispute the following: Mathur told Downs he was being robbed and asked Downs to call the police; Downs refused to help Mathur; James told Downs he was taking Mathur's money because Mathur had refused to pay James for prostitution services; and Downs told James he would support James' version of the encounter with Mathur if anyone asked him about it. *Id.* ¶¶ 17-20.

James and Mathur then entered the same elevator and rode it down to the lobby. *Id.* ¶¶ 21-22. Upon arriving in the lobby, Mathur called for hotel personnel to help in apprehending James, but James was able to exit the Hotel without being detained. *Id.* ¶¶ 22-23.

On the date Mathur alleges he was robbed, some rooms in the Hotel had door chains and some rooms did not. *Id* at ¶ 49. Security services at the Hotel were provided by an outside contractor. *Id.* ¶ 55. The Hotel had security cameras that continuously recorded certain common spaces in the hotel, such as parts of the lobby. Dkt 112 ¶ 33. The Hotel retained security footage for fifteen days before it was automatically recorded over. *Id.* ¶ 34. When Defendants received a litigation hold letter from Mathur on May 1, 2013, all of the security footage from April 15 had been recorded over, except for some footage from the lobby elevator bank that Defendants retained at the request of the Chicago Police Department. *Id.* ¶¶ 38-40.

**Legal Standard**

Summary judgment is appropriate if the evidence shows that there is "no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

---

[1] Defendants refer to James as "Ms. James" throughout their Rule 56 Statement of Facts but in their brief, without citation to the record, state that James was "a man who dressed in women's clothing and with a hairstyle typically worn by women." Plaintiff refers to James as "Mr. James." Because the parties appear to agree that James is male and the Court has no other insight as to James' gender identity, the Court will use masculine pronouns.

2

The party seeking summary judgment has the "initial responsibility" to show that there is no genuine issue of material fact, *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986), but the Court must view all facts and make all reasonable inferences in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). The Court may enter summary judgment only if the record as a whole establishes that no reasonable jury could find for the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.,* 209 F.3d 687, 692 (7th Cir.2000).

**Discussion**

*Defendants' Duties*

Defendants argue they are entitled to judgment on the negligence claims because they had no duty to protect Mathur from the criminal acts of third parties. In response Mathur asserts that Defendants' duty arose either from their status as innkeepers or out of their voluntary undertaking to provide security for their guests. Mathur argues that Defendants had both a duty to prevent the robbery and to help Mathur after the robbery was underway.

*1. Duty to Prevent the Robbery*

Under Illinois law, an innkeeper owes a duty to its guests to protect them from reasonably foreseeable criminal attacks. *Doe v. Goff,* 716 N.E.2d 323, 326 (Ill. App. 1999). A criminal attack is reasonably foreseeable "when the circumstances are such as to put a reasonably prudent person on notice of the probability of an attack." *Id.* A plaintiff must point to something more than a generalized risk of criminal activity in order to establish that the criminal act at issue was foreseeable. *Id.*

Here Mathur has pointed to no specific circumstances that would have put defendants on notice that Mathur was likely to be robbed in his room aside from the fact that the Hotel is located in the downtown area of a large city. This circumstance alone does not impose a duty on Defendants to protect Mathur from all the types of crimes that can occur in an urban locale. Absent the some other

3

special circumstance, Defendants did not owe Mathur a duty to prevent Mathur from being robbed while he was in his hotel room simply because they are innkeepers and Mathur was their guest.

Mathur argues in the alternative that Defendants' duty arose out of their voluntary undertakings to provide security to their guests via their security personnel and to install a chain on the door of Mathur's hotel room. Because Defendants hired an outside security service provider rather than provide the service themselves, their duty was limited to using reasonable care in selecting the security provider they hired. *See Pippin v. Chicago Hous. Auth.*, 399 N.E.2d 596, 599 (Ill. 1979). Mathur's complaint does not state a claim for negligent hiring, nor does his brief on summary judgment argue such is the nature of the negligence claim. Therefore any arguments regarding the deficiencies in the provision of security services by the security contractor are not relevant to Defendants' duty in this case.

Mathur's argument regarding Defendants' voluntary undertaking to install a door chain also lacks merit. Defendants did not voluntarily undertake a duty to install a chain on Mathur's door by installing chains on other doors in the hotel. A party may abandon or terminate a voluntary undertaking at any time unless by doing so he has left another in a worse position. *Bell v. Hutsell*, 955 N.E.2d 1099, 1108 (Ill. 2011). There is no evidence in the record to permit the inference that Defendants increased the risk of harm to Mathur by installing door chains on other rooms in the hotel but not his.

*2. Duty to Render Aid*

Having found that Mathur's theories regarding Defendants' duty to prevent the robbery fail as a matter of law, the Court now turns to Mathur's argument that Defendants had a duty to help Mathur once he alerted their employees that he was being robbed. The Court agrees with Mathur that Defendants had a duty to help Mathur after they were on notice that a robbery was underway.

4

An innkeeper has a duty to take affirmative steps to aid its guests even when it did not create the risk of harm. *Simpkins v. CSX Transp., Inc.*, 965 N.E.2d 1092, 1097-98 (Ill. 2012). "The duty to render aid in such cases is a duty to use reasonable care under the circumstances." *Parra v. Tarasco, Inc.*, 595 N.E.2d 1186, 1187-88 (1992). Although Defendants argue that Downs should not reasonably have been expected to attempt to restrain James or take back Mathur's money, there is a material factual dispute as to whether Downs offered any help at all. A reasonable hotel employee at the very least would have attempted to notify other hotel personnel who could have attempted to prevent James from leaving the premises. While this action might not have led to the recovery of Mathur's stolen money or prevented Mathur's other alleged injuries, the question of proximate cause is ordinarily left to the trier-of-fact. *Harrison v. Hardin Cty. Cmty. Unit Sch. Dist. No. 1*, 758 N.E.2d 848, 854 (Ill. 2001). A court should only determine proximate cause as a matter of law "where the facts are undisputed and reasonable men could not differ as to the inferences to be drawn from those facts." *Id.* Because there are material factual disputes as to how Downs reacted to Mathur's request for help, summary judgment on Mathur's failure to render aid claim is not appropriate.

*Contributory Negligence*

Defendants assert that irrespective of the scope of their duty, Mathur is barred from recovering on his negligence claims because he was more than 50 percent at fault for the robbery. They rely on the undisputed fact that Mathur did not use the peephole or ask who was there before opening the door to his room.

The Illinois Code of Civil Procedure bars a plaintiff from recovery if by his own contributory negligence he is more than 50 percent responsible for his own injury. 735 ILCS 5/2-116. A plaintiff is contributorily negligent when he acts "without the degree of care that a reasonably prudent person would have used for his . . . own safety under like circumstances." *Merca v. Rhodes*, 960 N.E.2d 85, 95 (Ill. App. 2011). The issue of contributory negligence is ordinarily a question of fact and should

5

"rarely" be decided as matter of law. *Id.* at 97. One way to evaluate the comparative negligence of each party is to compare the respective costs to the plaintiff and to the defendant of avoiding the injury. *Wassell v. Adams*, 865 F.2d 849, 854 (7th Cir. 1989). "If each could have avoided it at the same cost, they are each 50 percent responsible." *Id.*

Here, it is undisputed that Mathur did not use the peephole or ask who was there before opening to the door to his hotel room. A jury could undoubtedly find this conduct was negligent. However, the Court cannot determine as a matter of law that such action was more than 50 percent responsible for the robbery in light of the factual dispute surrounding the alleged failure to render aid. Using the formula proposed by the Seventh Circuit, Mathur would expend very little effort by using the peephole or asking who was there. Likewise, no great effort was needed for Downs to alert other hotel staff about the robbery. Under these circumstances it would be possible for a reasonable jury to find Mathur was only 50 percent or less responsible for his injury.

*Emotional Distress*

Defendants maintain they are entitled to judgment on Mathur's claims for emotional distress damages because recovery for emotional distress damages requires a physical impact and a level of severity that is absent here. Because the Court agrees with Defendants that Mathur's claimed emotional distress is not severe enough to be compensable, it need not address the physical impact issue.

The Seventh Circuit has interpreted Illinois law as requiring emotional injuries to pass a "threshold severity" in order to be compensable. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 707 (7th Cir. 2009). This Court is bound to follow the Seventh Circuit's interpretation of state law unless an intervening and contradictory Illinois Supreme Court decision "terminates the authoritative force" of the Seventh Circuit's interpretation. *Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004). In *Lewis*, the Seventh Circuit found that a plaintiff's "mild anxiety" which "only

6

minimally interferes with her everyday life" was not severe enough to be compensable. 561 F.3d at 708-709.

At his deposition, Mathur testified he was "upset," "felt cheated," and was "offended and hurt" by the lack of help provided by Defendants after he was robbed. He was "troubled" by the thought that he could have been harmed during the robbery, and he thought about the shame and humiliation that would have been brought upon his family if he had died and Defendants had wrongly reported that he had called a prostitute. Aside from being "extra vigilant" when he stays in hotels, he did not report any other effect on his daily life. Even when drawing all reasonable inferences from this testimony in favor of Mathur, the Court cannot conclude that Mathur's emotional distress passed the threshold severity articulated in *Lewis*.

*Spoliation*

Defendants move for summary judgment on Mathur's spoliation of evidence claim on the basis that they had no duty to preserve the video footage about which Mathur complains before it was destroyed in the ordinary course of business. The Court agrees.

Spoliation of evidence is a claim rooted in negligence; a plaintiff must prove a duty to preserve the evidence at issue, breach by losing or destroying the evidence, and damages. *Martin v. Keeley & Sons, Inc.*, 979 N.E.2d 22, 27 (Ill. 2012). To establish a duty to preserve evidence, a plaintiff must show that "an agreement, statue, special circumstance, or voluntary undertaking" gave rise to the duty. *Id.* at 28. The plaintiff must also show that the duty extends to the specific evidence at issue because "a reasonable person in the defendant's position should have foreseen that the evidence was material to a potential civil action." *Id.* (internal quotations and citations omitted).

Because there was no statutory or contractual relationship between Defendants and Mathur with respect to the footage at issue, Mathur must point to a voluntary undertaking or special circumstance that gave rise to a duty to preserve the footage. Mathur argues that even before the litigation hold

7

letter was received by Defendants, the duty to preserve the footage was triggered by the fact that the Defendants knew Mathur was robbed, the police were involved, and both the police and Defendants were using the footage at issue to investigate the incident. Mathur has not pointed to any Illinois law demonstrating these facts constitute the requisite special circumstances. Furthermore, "mere knowledge of the accident and the possible causes of the accident" is not enough to create a duty to preserve evidence. *Kilburg v. Mohiuddin*, 990 N.E.2d 292, 301 (Ill. App. 2013). Consequently, Mathur's spoliation claim fails.

*Punitive Damages*

This Court having found that the duty owed to Mathur was the duty to render aid once the robbery was underway, Mathur's negligence claim rests on the actions (or inactions) of Downs. Pursuant to Illinois' corporate complicity rule, Mathur cannot recover punitive damages from Defendants unless Downs "was acting in a managerial capacity" or his acts "were expressly authorized or ratified" by Defendants. *Jannotta v. Subway Sandwich Shops, Inc.*, 125 F.3d 503, 514 (7th Cir. 1997). Because there are no allegations or evidence in the record that support either route to establishing corporate complicity, Mathur cannot recover punitive damages.

*Amount in Controversy*

Having found that Mathur cannot recover emotional distress or punitive damages, this Court has concerns as to whether the amount in controversy required for diversity jurisdiction exists in this case. To aid this Court in determining whether sua sponte remand is required, the Court requests each party submit a brief arguing its position on the amount in controversy within 30 days of this order.

**Conclusion**

For the foregoing reasons, Defendants' motion to dismiss [94] is granted in part and denied in part. Counts II and III are dismissed with prejudice. Count I survives.

IT IS SO ORDERED.

_____
SHARON JOHNSON COLEMAN
United States District Judge

DATED:  February 10, 2016